IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

AU HEALTH SYSTEM, INC., et          *
al.,                                *
                                    *
        Plaintiffs,                 *
                                    *       CV 121-019
            v.                      *
                                    *
AFFILIATED FM INSURANCE             *
COMPANY,                            *
                                    *
        Defendant.                  *

## O R D E R

Currently pending before the Court is AU Health System, Inc., AU Medical Associates, Inc., and AU Medical Center, Inc.'s (collectively, "the AU Insureds") motion for partial judgment on the pleadings (Doc. 13), Affiliated FM Insurance Company's ("AFM") motion for partial judgment on the pleadings (Doc. 31), and the AU Insured's motion for oral argument (Doc. 42).  The Court addresses each of the motions below.

## I. BACKGROUND

On February 4, 2021, Plaintiffs sued AFM for breach of contract, declaratory judgment, and bad faith arising under an all risk insurance policy ("the Policy").  (Compl., Doc. 1, at 1.) AFM is the insurance company that issued Plaintiffs the Policy to provide coverage against all risks of physical loss or damage,

except as specifically excluded.[1]   (Id. ¶ 11.)   The Policy also provides for the recovery of gross earnings and profits loss resulting from business interruptions for various reasons.   (Id. ¶¶ 17-18.)   The Policy was valid from July 1, 2019 until June 30, 2020 and was renewed for an additional period from July 1, 2020 through June 30, 2021.   (Id. ¶ 12.)   The Policy covers over thirty of Plaintiffs' locations (the "Insured Locations"), including the main hospital, various outpatient offices, and an outpatient surgery center, all of which are enumerated in the Policy.   (Id. ¶ 15.)

As a result of SARS-COV-2 ("COVID-19"), Plaintiffs suffered damages as their business operations were interrupted by the virus. (Id. ¶ 1.)   Plaintiffs provided a Sworn Statement of Notice of Claim of Loss to AFM in April 2020, proceeded to supplement that claim in June 2020, and the claim was rejected by AFM on June 24, 2020. (Id. ¶ 2.)   Plaintiffs provided additional supplementation on July 20, 2020 and AFM again rejected the claim, ultimately resulting in this lawsuit. (Id.)

Plaintiffs allege AFM is required to cover their property damage costs and business interruption losses, as well as pay damages and attorney's fees due to its bad faith denial of their insurance claims. (Id. at 44-48.)   AFM admits COVID-19 is a communicable disease but denies that Plaintiffs are entitled to

---

[1] There is no dispute that AFM issued Plaintiffs the Policy at issue.

any relief from AFM at this time.   (Doc. 6, at 1-2.)   Plaintiffs assert a claim for property damage, as well as claims under the Business Interruption provision, Civil or Military Authority provision, and the Communicable Disease provisions.   (See Compl.; Policy, Doc. 1-2.)

The Policy covers Plaintiffs' property "against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded." (Policy, at 5.)   The Policy has a location schedule attached listing 27 covered locations (the "Insured Locations").[2]   (Id. at 13.)   "The Policy contains a number of exclusions, which in turn, are subject to various exceptions."   (Doc. 31, at 7.)   Therefore, the inquiry for recovery is: "(1) an event of physical loss or damage to a covered property will be insured if the factual predicate is met, (2) unless an exclusion applies, and (3) an exclusion applies unless an exception to that exclusion is 'otherwise stated.'" (Id.)

One of the enumerated exclusions is for Contamination and provides:

> This Policy excludes: . . . Contamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy.   If contamination due only to the actual not suspected presence of contaminant(s) directly results from other physical damage not excluded by this Policy, then only physical damage cause by such contamination may be insured.

---

[2] AFM admits the list of Insured Locations was updated a few times during the coverage period to add properties to the list.   (See Doc. 6, ¶ 31.)

(Policy, at 20-21.) The Policy has additional coverage for property damage explicitly caused by a communicable disease. (See id. at 23.) The Communicable Disease provision provides:

> If a described location owned, leased or rented by the Insured has the actual not suspected presence of communicable disease and access to such described location is limited, restricted or prohibited by:
>> a) An order of an authorized governmental agency regulating or as a result of such presence of communicable disease; or
>> b) A decision of an Officer of the Insured as a result of such presence of communicable disease,
> This Policy covers the reasonable and necessary costs incurred by the Insured at such described location for the:
>> (a) Cleanup, removal and disposal of such presence of communicable disease from insured property; and
>> (b) Actual costs or fees payable to public relations services or actual costs of using the Insured's employees for reputation management resulting from such presence of communicable disease on insured property.

(Id.) Further, the Policy provides recovery for Business Interruption losses. (Id. at 35-47.) This includes the recovery of gross earnings and gross profits loss, with some exclusions. (Id. at 36.) The Business Interruption provision provides:

> This Policy insures Business Interruption loss, as provided in the Business Interruption Coverage, as a direct result of physical loss or damage of the type insured:
>> 1. To property as described elsewhere in this Policy and not otherwise excluded by this Policy;
>> 2. Used by the Insured;
>> 3. While at a location or while in transit as provided by this Policy; and
>> 4. During the Period of Liability as described elsewhere in this Policy.
> This Policy insures Business Interruption loss only to the extent it cannot be reduced through:
>> 1. The use of any property or service owned or controlled by the Insured;

> 2. The use of any property or service obtainable
> from other sources;
> 3. Working extra time or overtime; or
> 4. The use of inventory;
> All whether at a location or at any other premises.  This
> Company reserves the right to take into consideration
> the combined operating results of all associated,
> affiliated or subsidiary companies of the Insured in
> determining the amount of loss.

(Id. at 35.)   There are also Business Interruption Coverage

Extensions, which extend coverage for Civil or Military Authority

losses or Communicable Disease losses.   (Id. at 40-41.)   The Civil

or Military Authority extension provides:

> This Policy covers the Business Interruption Coverage
> loss incurred by the Insured during the Period of
> Liability if an order of civil or military authority
> prohibits access to a location provided such order is
> the direct result of physical damage of the type insured
> at a location or within five (5) statute miles of it.

(Id. at 40.)   The Communicable Disease extension mirrors the

Communicable Disease Provision outlined above but extends coverage

to include "the Business Interruption Coverage loss incurred by

the Insured during the Period of Liability at such described

location with such presence of communicable disease."   (Id. at

41.)   Both Plaintiffs and AFM move for partial judgment on the

pleadings and the Court addresses each motion below.


## II. LEGAL STANDARD

"After the pleadings are closed – but early enough not to

delay trial – a party may move for judgment on the pleadings." FED.

R. CIV. P. 12(c).   "Judgment on the pleadings is proper when no

issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." Cunningham v. Dist. Att'y's Off. for Escambia Cnty., 592 F.3d 1237, 1255 (11th Cir. 2010) (citation omitted). "The legal standards applicable to Federal Rule of Civil Procedure 12(c) motions for judgment on the pleadings and Rule 12(b)(6) motions to dismiss are the same." Marshall v. Safeco Ins. Co. of Ind., No. CV 112-113, 2013 WL 12155468, at *1 (S.D. Ga. Apr. 16, 2013) (citing Roma Outdoor Creations, Inc. v. City of Cumming, 558 F. Supp. 2d 1283, 1284 (N.D. Ga. 2008)).

Therefore, when considering a motion for judgment on the pleadings, the Court must "accept as true all material facts alleged in the non-moving party's pleading[] and . . . view those facts in the light most favorable to the non-moving party." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1335 (11th Cir. 2014).

> Moreover, "while notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'"

Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

### III. PLAINTIFFS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Plaintiffs move for partial judgment on the pleadings, requesting the Court find: (1) COVID-19 is a "communicable disease," as defined under the Policy; (2) COVID-19 was "actually present" at their "described locations," as the terms are used in the Policy; (3) a decision of an officer of Plaintiffs limited, restricted, or prohibited access to the "described locations," as defined in the Policy; and (4) such decision was "a result of" the presence of COVID-19, as the terms are used in the Policy, therefore finding they have established coverage under the Communicable Disease provisions. (Doc. 13, at 1, 4-5.)

Further, Plaintiffs request the Court deem as admissions some of AFM's denials, as set forth in its Answer (Doc. 6): (1) Paragraphs 23, 30-31, and 47-79, as to the allegations that COVID-19 was actually present at the Insured Locations; (2) Paragraphs 51-58, as to the allegations that an officer of Plaintiffs issued decisions limiting, restricting, or prohibiting access to described locations; and (3) Paragraphs 51-58, as to the allegations that such decisions were a result of the presence of COVID-19. (Doc. 13, at 2.)

AFM responded in opposition, arguing the assertions in its Answer and Affirmative Defenses (Doc. 6) must be accepted as true, the request to change its denials to admissions should be rejected, and Plaintiffs' motion should be denied. (Doc. 23, at 1-2.)

**A. AFM's Denials of Fact**

The Parties agree that to successfully bring claims under the Communicable Disease provisions, Plaintiffs must prove: (a) COVID-19 is a "communicable disease," (b) it was "actually present" at the "described locations," (c) Plaintiffs' officers orders limited, restricted, or prohibited access to these locations, and (d) those orders were issued as a result of the actual presence of COVID-19. (See Doc. 13, at 1; Doc. 23, at 1.) Plaintiffs believe they are entitled to judgment on these claims because numerous of AFM's denials of fact for alleged lack of information should be deemed admissions. Plaintiffs argue "a defendant may not assert a denial for lack of knowledge if the necessary facts are within its knowledge or easily obtainable, a matter of general knowledge in the community, or a matter of public record." (Doc. 13, at 5.) Plaintiffs state "AFM does **not** lack knowledge as to whether COVID-19 was present at the [Insured Locations] or whether [Plaintiffs'] officers issued orders limiting, restricting, or prohibiting access to the [I]nsured [L]ocations." (Id. at 14.)

In response, AFM argues its denials are in response to paragraphs that contain: "(a) allegations based upon information within Plaintiffs' – and not AFM's – control; (b) self-serving characterizations of Plaintiffs' own documents; (c) Plaintiffs' alleged subjective motivations for taking certain actions; and (d) the alleged impact certain actions had on Plaintiffs' operations." (Doc. 23, at 2.) Ultimately, it argues these allegations were

8

based on information to which AFM was not privy and therefore denials were appropriate. (Id.)

Pursuant to Federal Rule of Civil Procedure 8(b), a party must respond to a pleading by admitting or denying the allegations, and if only part of a pleading is true, it must admit that part and deny the rest. "Normally, a party may not assert a lack of knowledge or information if the necessary facts or data involved are within his knowledge or easily brought within his knowledge." J. Christopher's Rests., LLC v. Kranich, No. 8:09-CV-2422, 2010 WL 4007666, at *5 n.3 (M.D. Fla. Oct. 13, 2010) (quoting 5 Charles Alan Wright et al., Federal Practice and Procedure § 1262 (4th ed.)). Plaintiffs rely on this instruction when asking the Court to deem AFM's denials as admissions. Plaintiffs take issue with the fact they provided AFM with Sworn Statements of Loss, and supplements to those statements, proving they tested and treated hundreds of positive patients at their locations, yet AFM denies COVID-19 was actually present. (Doc. 13, at 5.) Further, they provided copies of their officers' orders limiting, restricting, or prohibiting access to their locations. (Id. at 6.) And finally, AFM was aware the orders and restrictions were issued "as a result of" the actual presence of COVID-19. (Id.) In turn, AFM argues Plaintiffs only provided it with vague and general information about their claims. (See Doc. 23, at 4.) Even after AFM twice requested supplemental information, Plaintiffs failed to submit "sufficient information to demonstrate coverage under the

communicable disease provisions and requested specific information to support coverage under these provisions." (Id. at 4-5 (citing Doc. 1-7, at 5).) The Court does not believe AFM's denials were made in bad faith or with the intent to deceive the Court.

As to the presence of COVID-19, although it is public knowledge COVID-19 caused a world-wide pandemic, that alone does not provide AFM with the knowledge necessary to identify the explicit effects COVID-19 had on Plaintiffs' Insured Locations. As to the statements and supplements Plaintiffs provided, AFM clearly requested additional proof of "one positive COVID-19 test result per location with all personal information redacted," in order to confirm the "actual presence" of COVID-19 at each Insured Location and Plaintiffs failed to provide such. (Doc. 23, at 5-6.) AFM states Plaintiffs did not provide information documenting the actual presence of COVID-19 at each of the 32 locations listed in Paragraph 31 of the Complaint and argues it cannot confirm whether the alleged numbers of patients at their facilities is accurate as represented in Paragraphs 47-49. (Id. at 11.) Plaintiffs do not believe documentation is required under the Policy and since Governor Kemp ordered them to provide treatment for COVID-19 patients, there is no question COVID-19 was present at their locations. (Doc. 30, at 11-12.)

The Court acknowledges that Plaintiffs provided AFM with summaries of the COVID-19 daily census and timeline of COVID-19 positive associates (See Doc. 1-4, at 39, 41); however, there is

no way to logically tie the positive patients and employees to the more than thirty locations covered under the Policy. Plaintiffs stating COVID-19 was "present at Plaintiffs' locations insured by the Policy" does not link specific positive cases to each location. (Compl., ¶ 23.) Plaintiffs provided a list of thirty-two locations that "experienced the actual presence of COVID-19," but the Court does not find these conclusory allegations sufficient to trigger coverage. (Id. ¶ 31.) AFM requested additional documentation on numerous occasions and Plaintiffs simply re-asserted their summaries and conclusions about COVID-19 being present everywhere. Based on this, the Court will not deem as admissions paragraphs 23, 30-31, or 47-49 of AFM's Answer because AFM was unable to confirm the allegations on its own accord.

As to the officers' orders, Plaintiffs submitted copies of these with the Supplements to their Proof of Loss. (Doc. 13, at 13.) Based on this, and the fact such orders are public record, they argue AFM could not lack knowledge that Plaintiffs' officers issued orders that limited, restricted, or prohibited access to the Insured Locations. (Id. at 14.) AFM does not deny the existence of orders from Plaintiffs' officers in the wake of COVID-19, but argues Plaintiffs' characterizations of such are self-serving and contain alleged subjective motivations for taking the actions to which AFM is not privy. (Doc. 23, at 10.) Further, the orders allegedly arise due to the "actual presence" of COVID-19, but as the Court explains below, AFM did not receive the

specific details necessary to confirm COVID-19 was actually present at each Insured Location. (Id. at 13.) The Court does not find AFM's denials in Paragraphs 51-58 were made in bad faith or with the intent to deceive the Court. Once again, AFM's justification seems reasonable as to the fact it denied these paragraphs because it has yet to confirm the "actual presence" of COVID-19 at all Insured Locations, and it was not inside the minds of Plaintiffs' officers; therefore, it is impossible to know the officers' reasoning and justification for each order. While AFM admits the orders were issued, and simply by looking at them it is clear they have connections to COVID-19, it is unfair to require AFM to blindly accept Plaintiffs' self-serving statements such as the fact the orders were issued "[t]o prevent non-COVID-19 patients from contracting the disease" or the orders themselves "resulted in significant business interruption" when such details are not clear. (See Compl., at 22-25.)

Based on these findings, the Court will not deem any of AFM's denials as admissions, as it finds no bad faith in AFM's hesitation to simply admit Plaintiffs' conclusory allegations. Consequently, Plaintiffs' motion is **DENIED** as it relates to the request to turn AFM's denials into admissions.

## B. Communicable Disease

AFM admits COVID-19 is a "communicable disease," as the term is defined under the Policy. (Doc. 6, at 1; Doc. 23, at 3.)

Therefore, Plaintiffs' motion is **GRANTED** as it relates to COVID-19 being a communicable disease.

## C. Actual Presence of COVID-19

The Policy requires the Insured have "the actual not suspected presence of communicable disease." (Policy, at 23.)   However, the Policy does not define "actual presence."   When Plaintiffs submitted their proof of loss to AFM, AFM requested "confirmation of how each location was determined to have the actual presence of COVID-19, copies of the test reports if the locations have been tested, copies of employee or other person's test results (with personal identifying information redacted), confirmation of the date of the employee(s)/patient(s) positive test(s), and support to establish when the employee(s)/patient(s) was present at the location."   (Doc. 23, at 4 (citing Doc. 1-6, at 3).)   This information, although requested more than once, was never provided to AFM.   (Id. at 5-6.)

Plaintiffs, in their Second Supplement to Sworn Statement in Proof of Loss, provided statistics about COVID-19 cases in Georgia and South Carolina and stated that they "had a responsibility to see and treat patients infected with COVID-19." (Doc. 1-4, at 8.) They emphasize their "responsibility became heightened when [Augusta University Health System] was appointed as the lead healthcare provider to screen and treat patients [in Georgia]." (Id.)   Once again, they believe "evidence that COVID-19 patients were indeed seen and treated" at the Insured Locations is

sufficient to prove COVID-19's actual presence. (Id.) Plaintiffs acknowledge AFM requested documentation, including positive test results for employees and patients, but argue such disclosure would violate patient and employee privacy. (Id. at 9.)

The Court understands Plaintiffs' reasoning that as the government-ordered facility treating COVID-19 patients, it is safe to assume COVID-19 was "actually present" at some of the Insured Locations at some point or another. However, the Court also understands AFM's request for test results so they can accurately match positive COVID-19 patients and employees with each Insured Location on specific dates. Plaintiffs' argument that disclosure would violate patient and employee privacy is imprudent as AFM specifically stated such information could be redacted. Based on this, the Court is not inclined to deem as true that COVID-19 was "actually present" at all of the Insured Locations. More information is necessary to specify which locations were being utilized for what type of care and patients, because based on the closures and limited use of the facilities, the Court, and AFM, are unwilling to blindly accept Plaintiffs' contention that all of the Insured Locations had COVID-19 "actually present." Therefore, Plaintiffs' motion is **DENIED** as it relates to the "actual presence" of COVID-19 because the pleadings are not sufficiently clear COVID-19 was actually present at all Insured Locations.

**D. AU Insured Officer Orders**

Plaintiffs contend "[a] decision of an officer of the AU Insureds limited, restricted, or prohibited access to the AU Insureds' 'described locations[.]'" (Doc. 13, at 1.) Starting in March 2020, Plaintiffs required additional intake questions, cancelled elective procedures, established a screening process for people entering the premises, cancelled visitation hours, and required COVID-19 testing, among other things. (Id. at 12-13.) They submitted a narrative to AFM describing their officers' orders and explaining how they limited, restricted, or prohibited access to Plaintiffs' locations. (Id. at 13.)

AFM argues that the internal orders "were issued to prevent COVID-19 from entering Plaintiff's facilities, and not because of the actual presence of COVID-19 at Plaintiff's facilities." (Doc. 23, at 14.) It goes on to assert that "[n]one of the referenced orders appear to be issued to limit, restrict or prohibit access to a location as a result of the 'actual presence' of COVID-19." (Id.) It is unclear from the pleadings which locations the officer's orders limited, restricted, or prohibited access to, and the purpose for which they were issued. Therefore, there are disputed material facts concerning the purpose and reasoning behind them and Plaintiffs' motion is **DENIED** as it relates to the officers' orders.

## E. Conclusion

Based on the foregoing, the Court finds there are issues of material fact as to Plaintiffs' claims under the Communicable Disease provisions and judgment on the pleadings is improper at this time.  Therefore, Plaintiffs' motion is **DENIED** as it relates to their claims under the Communicable Disease provisions.


## IV.   AFM'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

AFM requests the Court dismiss with prejudice all of Plaintiffs' claims except for those made under the Communicable Disease provisions.  (Doc. 31, at 1.)  AFM argues that Georgia courts have repeatedly held that COVID-19 does not cause "'physical loss or damage' as required by property insurance policies, so Plaintiffs cannot satisfy this threshold condition" to their coverage.  (Id. at 4.)  Specifically, AFM is moving to dismiss Plaintiffs' claims for "physical loss or damage" to property, as well as their claims under the Business Interruption and Civil or Military Authority provisions.  (Id. at 5.)

Plaintiffs oppose AFM's motion, claiming they alleged adequate physical loss and damage to their property.  (Doc. 35, at 2.)  They assert they have a viable claim for Civil Authority coverage and that AFM's position regarding the Contamination exclusion is untenable.  (Id. at 3.)  AFM replied in support of its motion, again arguing Georgia law is "well-settled" with regards to the "physical loss or damage" requirement in commercial

property insurance policies, and therefore all claims except for the Communicable Disease provision claims should be dismissed. (Doc. 41, at 1.)   The Court addresses these claims in turn.

## A. Property Damage

Plaintiffs allege COVID-19 contaminates surfaces, thus damaging their property and warranting coverage under the Policy. (Doc. 1, at 27.)   They assert that under the Communicable Disease coverages, the presence of a communicable disease itself is property damage, there ending the inquiry.[3]   (Doc. 35, at 2.) Further, Plaintiffs argue that if they must show physical loss or damage separate from the mere presence of COVID-19, they have alleged the same because their property became unsatisfactory when COVID-19 was introduced, as the air was unbreathable and uninhabitable, and surfaces were covered in COVID-19. (Id.) AFM moves for judgment on the pleadings based on Georgia law's clear precedent that COVID-19 itself does not cause physical loss or damage to property. (Doc. 31, at 11.)   In response, Plaintiffs argue that at the very least, an ambiguity exists, and interpretation of the Policy should be construed against the insurer, in favor of the insured. (Doc. 35, at 11.)

---

[3] There is a provision in the Policy titled "Communicable Disease – Property Damage" that provides coverage when a location has the actual, not suspected, presence of communicable disease and covers cleanup, removal and disposal of such presence from the property. (Policy, at 23.)   Plaintiffs argue that this provision shows that COVID-19 constitutes property damage; however, the Court is not convinced by this argument because this provision does not have the same requirement of "physical loss or damage" as other provisions in the Policy.   If the drafters intended for this "property damage" to satisfy the requirements of other provisions, they would have defined them the same way.

In Georgia, insurance contracts "are interpreted by ordinary rules of contract construction. . . . Where the terms are clear and unambiguous, and capable of only one reasonable interpretation, the court is to look to the contract alone to ascertain the parties' intent." Burkett v. Liberty Mut. Fire Ins. Co., 629 S.E.2d 558, 559-60 (Ga. Ct. App. 2006) (citation omitted).

> According to the Georgia Court of Appeals, the term "direct physical loss or damage to" in an insurance policy "contemplates an *actual change* in insured property then in a satisfactory state, occasioned by accident or other fortuitous event directly upon the property causing it to become unsatisfactory for future use or requiring that repairs be made to make it so."

Johnson v. Hartford Fin. Servs. Grp., Inc., 510 F. Supp. 3d 1326, 1332 (N.D. Ga. 2021) (quoting AFLAC Inc. v. Chubb & Sons, Inc., 581 S.E.2d 317 (Ga. Ct. App. 2003)).

The Court agrees with AFM and finds that courts in this Circuit have consistently denied coverage for alleged physical loss and damage resulting from COVID-19 by finding that "public health orders, COVID-19 contamination, and operational changes to reduce virus transmission do not constitute direct physical loss or damage to insured property." AIKG, LLC v. Cincinnati Ins. Co., No. 1:20-cv-4051, 2021 WL 4061542, at *3 (N.D. Ga. Sept. 7, 2021) (citing Henry's La. Grill, Inc. v. Allied Ins. Co. of Am., 495 F. Supp. 3d 1289, 1296-97 (N.D. Ga. 2020); K D Unlimited Inc. v. Owners Ins. Co., 522 F. Supp. 3d 1287, 1984 (N.D. Ga. 2021); Rest. Grp. Mgmt., LLC v. Zurich Am. Ins. Co., No. 1:20-cv-4782, 2021 WL 1937314, at *6 (N.D. Ga. Mar. 16, 2021)). These courts "have

refused to expand 'direct physical loss' to include loss-of-use damages when the property has not been physically impacted in some way." Id. (citing Johnson, 510 F. Supp. 3d at 1333). Although Plaintiffs allege the Insured Locations suffered from unbreathable air and surfaces covered in COVID-19, this is not the kind of "actual" change required by Georgia courts. See id. ("The change must be 'actual,' and the Plaintiffs' contamination allegations do not indicate an actual physical change occurred on the premises as the result of COVID-19"); see also Henry's La. Grill, 495 F. Supp. 3d at 1295 (rejecting a restaurant's argument that a Governor's order led to actual physical loss or damage because "[e]very physical element of the dining rooms – the floors, the ceilings, the plumbing, the HVAC, the tables, the chairs – underwent no physical change as a result of the Order.") Based on this, Plaintiffs have failed to sufficiently allege a claim for recovery due to physical loss or damage to the Insured Locations; therefore, that claim is **DISMISSED**.

## B. Civil Authority Coverage

Plaintiffs also seek recovery under the Civil or Military Authority section of the Business Interruption Coverage Extension. (Compl., ¶ 33; Policy, at 40.) They allege that "[i]n an effort to slow the spread of COVID-19, and as a result of physical damage caused by COVID-19, the federal government and Georgia and South Carolina state governments and local governments imposed numerous orders to protect the public." (Compl., ¶ 33.) Further, they

allege "COVID-19 was present at Property insured by the Policy and the surrounding five (5) miles." (Id. ¶ 34.) Specifically, Plaintiffs rely on Georgia Governor Kemp's Executive Orders issued in response to COVID-19 that declared a Public Health State of Emergency on March 14, 2020 as well as his Shelter in Place Order on April 2, 2020. (Id. at 17-18.) Because of these and other orders, and for other reasons, Plaintiffs "suspended entire service lines, including elective surgery, which is ordinarily one of the most profitable service lines for any large health system." (Id. ¶ 63.) "Access to Plaintiffs' Property [was] limited because of various . . . Civil Authority Orders." (Id. ¶ 114.)

AFM argues Plaintiffs failed to satisfy the elements of the Civil or Military Authority provision. (Doc. 31, at 19; Doc. 41, at 16.) As noted above, the Civil or Military Authority provision requires: (1) an order of civil or military authority that prohibits access to an Insured Location and (2) the order is the direct result of physical damage of the type insured at an Insured Location or within five (5) miles of it. (Policy, at 40.) The Court will analyze AFM's contentions by each required element.

### 1. Prohibits Access to Insured Location

AFM argues there was no government order that prohibited access to the Insured Locations. (Doc. 31, at 19.) AFM cites Johnson to support its contention that civil authority coverage is not permitted "because the policyholder was not prohibited from

accessing its . . . office or offering limited procedures." (Id. (citing Johnson, 510 F. Supp. 3d at 1336).)

The Court first notes that the Civil or Military Authority provision specifically requires that the order "prohibited" access to an Insured Location, whereas the Communicable Disease – Business Interruption provision simply requires access be "limited, restricted, or prohibited." (Policy, at 40, 41.) Plaintiffs do not sufficiently allege that the government orders *prohibited* complete access to the Insured locations. In fact, they emphasize they were required to service COVID-19 patients at their Insured Locations, suggesting access to them was not prohibited. (See Compl., at 16.) Plaintiffs haphazardly assert they "were *effectively* required to prohibit access to property for anything but COVID-19 and other essential services" and were "ordered to use their property to diagnose and treat COVID-19 patients." (Doc. 35, at 3 (emphasis added).) Plaintiffs specifically reference Governors Kemp and McMaster's orders which prohibited access for non-essential procedures. (Id.) They believe their situation is different than other cases addressed by Georgia courts because their locations were ordered to be used to diagnose and treat COVID-19 patients. (Id.) AFM disagrees with their arguments.

AFM relies on Paradies Shops, Inc. v. Hartford Fire Ins. Co., which the Court believes is illustrative with regards to the "prohibit" requirement. No. 1:03-cv-3154, 2004 WL 5704715 (N.D. Ga. Dec. 15, 2004). In interpreting a civil authority provision,

the Northern District of Georgia found the plain meaning of the unambiguous term "prohibit" means "to forbid by authority or command." Id. at *7.  Paradies involved airport stores seeking damages for loss of business after the 9/11 attacks.  Id. at *1. The Federal Aviation Administration banned all civilian aircraft takeoffs, but even though passengers were denied access to post-security areas of the airport and therefore plaintiff's stores, the Court found this was insufficient under the provision to prove the order "prohibited" access.  Id. at *8.  The Court held that "[u]nless the airports were actually closed by some civil authority, access to plaintiff's premises was not specifically prohibited [by the order] and coverage does not attach." Id.  This is analogous to Plaintiffs' situation.  Plaintiffs continue to draw the Court's attention to the fact their property was being accessed and used to test and treat COVID-19 patients. (Doc. 35, at 18.)  So, although non-essential services were not offered, the government orders did not *prohibit* access to the Insured Locations. Based on this, Plaintiffs have failed to establish the government orders specifically prohibited access to the Insured Locations. However, out of an abundance of caution the Court will address the second element of a claim under this provision.

   2. Direct Result of Physical Damage of Type Insured

   Once again, AFM argues COVID-19 does not cause physical damage to property under Georgia law. (Doc. 31, at 19; Doc. 41, at 17.) Further, none of the orders Plaintiffs reference "state or imply

that they were issued 'as a result of physical damage caused by COVID-19,' and Plaintiffs do not identify any such language." (Doc. 41, at 17.)   AFM further argues that "even if COVID-19 could cause physical damage to property, the government orders were not the 'direct result' of such damage."   (Id. at 18 (citing Paradies, 2004 WL 5704715).)

As the Court established above, COVID-19 does not cause physical damage or loss.   Therefore, the Governors' orders could not have been issued in order to avoid physical damage or loss caused by COVID-19.   Additionally, there is no language in the orders that implies the purpose of such "is the direct result of physical damage" caused by COVID-19.   (See Policy, at 40.)   Based on this, and for the reasons explained above, AFM's motion as to the Civil or Military Authority provision is **GRANTED** and this claim is **DISMISSED**.

## C. Business Interruption Coverage

AFM also moves for judgment on the pleadings under the Business Interruption provision, arguing again that there is no "physical loss or damage" which is required to trigger coverage. (Doc. 31, at 7.)   Once again, the Court finds that Plaintiff has not alleged sufficient physical loss or damage to trigger coverage under the Business Interruption provision, and this claim is **DISMISSED**.

## D. Contamination Exclusion

Finally, AFM emphasizes that the Contamination Exclusion bars coverage for "[c]ontamination, and any cost due to contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy." (Doc. 31, at 22.) Plaintiffs argue that this exclusion is subject to more than one reasonable interpretation, so it is unenforceable. (Doc. 35, at 22.) Having already dismissed Plaintiffs' claims requiring physical loss or damage to the Insured Locations, the Court finds no reason to address this argument.

## E. Conclusion

Based on the foregoing, the only claims remaining are those Plaintiffs bring pursuant to the Communicable Disease provisions which do not require "physical loss or damage" as a condition for coverage.

### V. MOTION FOR ORAL ARGUMENT

Finally, Plaintiffs filed a motion for oral argument on the Parties' motions for partial judgment on the pleadings. (Doc. 42.) AFM does not oppose the motion, but states the issues are straightforward. (Doc. 43.) The Court agrees, and based on the conclusions reached herein, Plaintiffs' motion for oral argument is **DENIED**.

## VI. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Plaintiffs'
partial motion for judgment on the pleadings (Doc. 13) is **GRANTED
IN PART and DENIED IN PART,** AFM's partial motion for judgment on
the pleadings (Doc. 31) is **GRANTED,** and Plaintiffs' motion for
oral argument (Doc. 42) is **DENIED.**   Specifically, all of
Plaintiffs' claims are **DISMISSED** except for the claims asserted
under the Communicable Disease provisions of the Policy.

Pursuant to United States Magistrate Judge Brian K. Epps's
April 29, 2021 Order (Doc. 24), the stay of discovery in this case
is hereby **LIFTED.**   The Parties shall submit a joint motion
detailing all final proposed case deadlines, including a proposed
Scheduling Order, within **SEVEN DAYS** of the date of this Order.

**ORDER ENTERED** at Augusta, Georgia, this ___15th___ day of March,
2022.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA