IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

AU HEALTH SYSTEM, INC., et   *
al.,   *
  *
   Plaintiffs,   *
  *
    v.   *
  *
AFFILIATED FM INSURANCE   *
COMPANY,   *
  *
   Defendant.   *

CV 121-019

## O R D E R

Currently pending before the Court are AU Health System, Inc. ("AUHS"), AU Medical Associates, Inc. ("AUMA"), and AU Medical Center, Inc.'s ("AUMC") (collectively, "the AU Insureds") motion for partial summary judgment (Doc. 63) and Affiliated FM Insurance Company's ("AFM") motion for summary judgment (Doc. 64). For the following reasons, the AU Insureds' motion for partial summary judgment is **DENIED** and AFM's motion for summary judgment is **GRANTED**.

## I. BACKGROUND

This is a breach of contract, property insurance dispute arising out of two policies issued by AFM to the AU Insureds before and during the SARS-COV-2 ("COVID-19") pandemic. (See Doc. 1.) On February 4, 2021, the AU Insureds sued AFM for breach of contract, declaratory judgment, and bad faith arising under the

issued insurance policies.  (Id. at 1.)  The undisputed facts are as follows.

In July 2019, the AU Insureds purchased, and AFM issued, an "All Risk" commercial property insurance policy, Policy Number IA271 (the "2019 Policy").  (Doc. 63-12, at 1; Doc. 64-4, at 1; Doc. 63-2.)  The 2019 Policy was effective from July 1, 2019 through July 1, 2020 and covered 27 of the AU Insureds' locations (the "Insured Locations") "against all risks of physical loss or damage" except as excluded through the Policy.  (Doc. 63-12, at 1; Doc. 71-1, at 2.)  AFM issued a second policy to the AU Insureds, Policy Number 106396, for the term of July 1, 2020 through July 1, 2021 (the "2020 Policy").  (Doc. 64-4, at 1; Doc. 64-1.)  Both the 2019 Policy and the 2020 Policy (collectively, the "Policies") have an $800 million policy limit and provide additional coverage for Communicable Diseases, represented through two provisions. (Doc. 64-4, at 1-3; Doc. 63-12, at 2; Doc. 63-2, at 7; Doc. 64-1, at 12.)  The Communicable Disease – Property Damage provision provides:

> If a described location owned, leased or rented by the Insured has the actual not suspected presence of communicable disease and access to such described location is limited, restricted or prohibited by:
>> a) An order of an authorized governmental agency regulating or as a result of such presence of communicable disease; or
>> b) A decision of an Officer of the Insured as a result of such presence of communicable disease,
> This Policy covers the reasonable and necessary costs incurred by the Insured at such described location for the:

> a) Cleanup, removal and disposal of such presence
> of communicable disease from insured property; and
> b) Actual costs or fees payable to public relations
> services or actual costs of using the Insured's
> employees for reputation management resulting from
> such presence of communicable disease on insured
> property.

(Doc. 63-2, at 26; Doc. 64-1, at 33.)   The Communicable Disease –

Business Interruption provision provides:

> If a described location owned, leased or rented by the
> Insured has the actual not suspected presence of
> communicable disease and access to such described
> location is limited, restricted or prohibited by:
>> a) An order of an authorized governmental agency
>> regulating such presence of communicable disease;
>> or
>> b) A decision of an Officer of the Insured as a
>> result of such presence of communicable disease,
> This Policy covers the Business Interruption Coverage
> loss incurred by the Insured during the Period of
> Liability at such described location with such presence
> of communicable disease.

(Doc. 63-2, at 44; Doc. 64-1, at 51.)   The Court previously found

COVID-19 is a "'communicable disease,' as the term is defined under

in the Policy."   (Doc. 44, at 12-13.)

The 2019 Policy's Declarations include sub-limits for each of

the Communicable Disease coverages in the amount of $100,000 annual

aggregate, for a total Communicable Disease coverage of $200,000.

(Doc. 63-2, at 8-9.)   The 2020 Policy's Declarations also include

sub-limits for Communicable Disease coverages in the total amount

of $1,000 annual aggregate.   (Doc. 64-1, at 14.)   Both Policies

define "annual aggregate" as: "the Company's maximum amount

payable during any policy year."   (Doc. 63-2, at 60; Doc. 64-1, at

67.)   The Communicable Disease sub-limits are the basis of the cross-summary judgment motions.

The Parties agree that during the 2019 Policy period, COVID-19 was "actually present", as defined in the Policy, at Insured Locations 1 and 21.   (Doc. 63-12, at 4-5.)   And during the 2020 Policy period, they agree COVID-19 was "actually present" at Insured Locations 10 and 11.   (Doc. 64-4, at 5.)   Based on the actual presence of COVID-19 for the 2019 Policy, AFM confirmed recoverable losses under both Communicable Disease provisions in excess of the sub-limits of $200,000.   (Doc. 63-12, at 5.)   AFM informed the AU Insureds the $100,000 sub-limits applied on a global basis, regardless of the number of insured locations with COVID-19 actually present and issued a check to the AU Insureds for $200,000.   (Id. at 5-6.)   The AU Insureds accepted the payment under a reservation of rights, and on July 27, 2022, they wrote AFM demanding AFM pay the AU Insureds $200,000 *per location* in which COVID-19 was actually present, instead of a single *global* payment.   (Id. at 6.)   For the 2020 Policy, AFM confirmed coverage based upon the two locations with the actual presence of COVID-19 and issued a $1,000 check to the AU Insureds.   (Doc. 64-4, at 5.) The AU Insureds contend the sub-limits for the Communicable Disease provisions in both Policies apply on a per location basis instead of globally.   (Id.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a motion for summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' if . . . it might affect the outcome of the case . . . [and it] is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004) (citations omitted). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted). The Court should not weigh the evidence or determine credibility. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998).

"Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective

positions." <u>Preis v. Lexington Ins. Co.</u>, 508 F. Supp. 2d 1061, 1068 (S.D. Ala. 2007). Essentially, the Court has no duty "to distill every potential argument that could be made based upon the materials before it on summary judgment." <u>Id.</u> (citing <u>Resol. Tr. Corp. v. Dunmar Corp.</u>, 43 F.3d 587, 599 (11th Cir. 1995)). Accordingly, the Court will only review the materials the Parties specifically cite and legal arguments they expressly advance. <u>See</u> <u>id.</u>

That this matter comes before the Court on cross motions for summary judgment does not alter the Court's standard of review, "but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." <u>United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.</u>, 972 F. Supp. 2d 1339, 1341 (N.D. Ga. 2013) (citing <u>Am. Bankers Ins. Grp. v. United States</u>, 408 F.3d 1328, 1331 (11th Cir. 2005)). Accordingly, each motion must be considered "on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." <u>Id.</u> As the Eleventh Circuit has held:

> Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed. . . . Nonetheless, cross-motions may be probative of the non-existence of a factual dispute when [ ] they demonstrate a basic agreement concerning what legal theories and material facts are dispositive.

United States v. Oakley, 744 F.2d 1553, 1555-56 (11th Cir. 1984)
(quoting Bricklayers Int'l Union, Local 15 v. Stuart Plastering
Co., 512 F.2d 1017, 1023 (5th Cir. 1975)).

In this action, the Clerk of Court provided the AU Insureds
and AFM notice of the summary judgment motions, the right to file
affidavits or other materials in opposition, and the consequences
of default.    (Docs. 67, 68.)    For that reason, the notice
requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th
Cir. 1985) (per curiam), are satisfied.  The Parties responded to
the each other's motion (Docs. 69, 71) and replied in support of
their own (Docs. 73, 74).   The time for filing materials has
expired, the issues have been thoroughly briefed, and the motions
are now ripe for consideration.    In reaching its conclusions
herein, the Court has evaluated the Parties' briefs, other
submissions, and the evidentiary record in the case.


## III. DISCUSSION

The Parties filed cross motions for summary judgment; thus,
the Court will analyze the motions together.[1]  The crux of both
motions is the definition of "annual aggregate" under the
Communicable Disease provisions' sub-limits.  The AU Insureds move
for partial summary judgment under the 2019 Policy on two points:
(1) COVID-19 was "actually present" at Insured Locations 1, 2, 8,

---

[1] The Court notes the Parties' motions make all of the same arguments aside from
the fact the AU Insureds move for summary judgment on the 2019 Policy and AFM
moves for summary judgment under both the 2019 and 2020 Policies.

18, 20, 21, and 24; and (2) the Communicable Disease sub-limits apply on a per-location, instead of global, basis. (Doc. 63-1, at 10, 12.)   Simultaneously, AFM moves for summary judgment under both Policies, arguing it has paid the AU Insureds the full annual aggregate sub-limits under the Policies; thus, the AU Insureds' remaining claims are to be dismissed. (Doc. 64, at 8-11.)   The Court turns to the Parties' arguments below.

A. Communicable Disease Provisions' Sub-Limit Interpretation

The motions for summary judgment turn on interpretation of the Communicable Disease provisions' sub-limits and the definition of "annual aggregate."   The Policies provide "annual aggregate means the Company's maximum amount payable during any policy year." (Doc. 63-2, at 60; Doc. 64-1, at 67.)   Under the 2019 Policy, both Communicable Disease provisions allow for coverage up to $100,000 annual aggregate, for a total of $200,000.   (Doc. 63-2, at 8-9.) Under the 2020 Policy, both Communicable Disease provisions allow for total coverage up to $1,000 annual aggregate.   (Doc. 64-1, at 14.)

The AU Insureds argue the sub-limits apply per location, not globally, for a number of reasons. (Doc. 63-1, at 12-19.)   First, they argue the plain language of the 2019 Policy creates an ambiguity because it is silent as to whether "annual aggregate" applies per location or globally, and three related provisions in the 2019 Policy specify when they operate on a global or per-property basis. (Id. at 14-15.)   The AU Insureds assert that since

8

there is an ambiguity, it must be resolved in favor of them as the insured.   (Id. at 17.)   Furthermore, they argue they reasonably expected the Communicable Disease sub-limits to apply per location because when they added additional Insured Locations to their 2019 Policy, they paid additional premium and the benefit they received for the increased premium was, at a minimum, coverage for the new locations, including Communicable Disease coverage.   (Id. at 18-19.)   Based on these arguments, the AU Insureds urge the Court to grant their motion for summary judgment and deny AFM's.   (Id. at 19-20; Doc. 69.)

On the other side, AFM argues the Communicable Disease sub-limits apply globally.   (Doc. 64; Doc. 71.)   First, AFM argues the Communicable Disease sub-limits are unambiguous, and a policy is not ambiguous just because it is *possible* to construe it more than one way.   (Doc. 64, at 8; Doc. 71, at 3 (citation omitted).)   AFM relies on case law from across the country in which insurance policies with the term "aggregate" have been interpreted to mean it is the maximum amount of coverage regardless of the number of locations or variables.   (Doc. 64, at 8-9 (citations omitted).) Further, AFM relies on the Western District of Washington's (the "Washington Court") 2021 decision in Nguyen v. Travelers Cas. Ins. Co. of Am., 541 F. Supp. 3d 1200, 1288 (W.D. Wash. 2021) in which the court interpreted an annual aggregate sub-limit identical to the Policies.   (Id. at 10.)   The Washington Court rejected the policyholder's arguments and found the annual aggregate sub-limit

9

applied globally, regardless of how many insured locations had the actual presence of COVID-19.   (Id.)   This is a quintessential contract interpretation debate, and the Court analyzes both sides' arguments below.

    1. Legal Standard

"The construction of a contract is a question of law for the court."  O.C.G.A. § 13-2-1.  "The cardinal rule of [contract] construction is to ascertain the intention of the parties." O.C.G.A. § 13-2-3.  As the Court explained in its March 15, 2022 Order, "[i]n Georgia, insurance contracts are interpreted by ordinary rules of contract construction. . . . Where the terms are clear and unambiguous, and capable of only one reasonable interpretation, the court is to look to the contract alone to ascertain the parties' intent."  (Doc. 44, at 18 (quoting Burkett v. Liberty Mut. Fire Ins. Co., 629 S.E.2d 558, 559-60 (Ga. Ct. App. 2006)).)   "[A] contract is not ambiguous, even though difficult to construe, unless and until an application of the pertinent rules of interpretation leaves it uncertain as to which of two or more permissible meanings represents the true intention of the parties."  Runyan v. Econ. Lab., Inc., 248 S.E.2d 44, 46 (Ga. Ct. App. 1978) (citation omitted).  "A court may not . . . impose upon unambiguous language a different meaning to comport with the drafter's claimed intent, or use extrinsic evidence to create an ambiguity in an otherwise unambiguous contract."  Watson

v. Union Camp Corp., 861 F. Supp. 1086, 1089 (S.D. Ga. 1994) (citations omitted).

Under Georgia's contract construction methodology, the first question is whether the terms contained in the Policies are unambiguous. "Where the contractual language is explicit and unambiguous, the court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured." Jones v. Golden Rule Ins. Co., 748 F. App'x 861, 864 (11th Cir. 2018) (quoting Ga. Farm Bureau Mut. Ins. Co. v. Smith, 784 S.E.2d 422, 424 (Ga. 2016)). In determining whether the relevant terms are unambiguous, the Court looks to the text of the Policies. Smith, 784 S.E.2d at 424. As the AU Insureds properly argue, "[t]he rule to strictly construe ambiguities in favor of the insured has been applied specifically in cases involving the interpretation of limits." (Doc. 63-1, at 13 (citing numerous cases from the Eleventh Circuit for holding that ambiguities in interpretations of limits are to be resolved in favor of the insured).) Thus, if the Court finds ambiguities exist in this case, it must construe them in favor of the AU Insureds.

2. Analysis

After a thorough analysis of the Parties' arguments and briefs, the Court finds the Policy sub-limits are clear and unambiguous. The definition of "annual aggregate" is clearly stated and defined as "the Company's maximum amount payable during any policy year" in both Policies, thus setting the maximum amount

payable under the Communicable Disease provisions' sub-limits. (Doc. 63-2, at 60; Doc. 64-1, at 67.) The Court finds these sub-limits apply globally because the plain language of the "annual aggregate" definition states it is the "maximum amount payable" with no indication of any variance based on number of locations. The plain language contains no ambiguities, and the Court will not create one based on the AU Insureds' desired outcome. Since the Court's interpretation is in line with AFM's interpretation of the Policies, the Court will address the AU Insureds' arguments against it as asserted in both their motion for partial summary judgment and their opposition to AFM's motion for summary judgment. (See Docs. 63-1, 69.)

First, the AU Insureds argue the plain language of the Communicable Disease sub-limits creates an ambiguity because it is *silent* as to how the sub-limits apply. (Doc. 63-1, at 14.) This argument is without merit and actually weighs against the AU Insureds' interpretation because other sub-limits specify when they apply "per item," "per patient," or "per animal." (Id. at 15 (citing Doc. 63-2, at 8-9).) Thus, if AFM wanted the Communicable Disease sub-limits to apply *per location*, it would have added that language as it did for other sub-limits. Instead, the sub-limits state they are an annual aggregate amount, plainly meaning they are the maximum amount payable regardless of varying circumstances or number of infected locations. The Court will not find an ambiguity simply because the AU Insureds wish to insert unnecessary

modifying language to the terms.   The AU Insureds try to rely on
the sub-limit section's introduction which explains "[w]hen a
limit of liability applies to a **location** or property, such limit
of liability will be the maximum amount payable for all loss or
damage."   (Id. at 15-16 (quoting Doc. 63-2, at 7) (emphasis in
original).)   However, this does not change the Court's
interpretation because this introductory language specifies it
only applies *when* a limit applies per location, and the clear
language here does not indicate the Communicable Disease sub-
limits apply per location.   Furthermore, there is case law in this
Circuit interpreting the term "aggregate" as the *total* amount of
coverage provided by a policy.   See e.g., Century Sur. Co. v.
Seductions, LLC, 349 F. App'x 455, 460 (11th Cir. 2009) (finding
an aggregate limit is the most the insurer will pay for the sum of
expenses, including those incurred by multiple people across
multiple occurrences).   Thus, the sub-limits need no additional
modifiers, and they are not ambiguous as written.

Next, the AU Insureds argue an ambiguity exists because the
Communicable Disease provisions themselves contain language that
"if a described location . . . has the actual not suspected
presence of a communicable disease" then coverage is triggered.
(Doc. 63-1, at 16.)   They argue "[t]he focus of coverage on each
location suggests the [sub-]limits should cover each location."
(Id.)   Again, the Court finds this argument meritless.   While
provisions in a contract are to be construed consistently with one

another, the use of "each location" in the Communicable Disease provisions does not change anything about the "annual aggregate" definition which applies to the entire Policy, not just these provisions or about the sub-limits which also are enumerated separately. See Est. of Pitts v. City of Atlanta, 746 S.E.2d 698, 706 (Ga. Ct. App. 2013) ("Each provision should be interpreted to harmonize with the others."). Furthermore, as AFM points out, "[t]he requirements of the Communicable Disease coverage provisions do not modify the sub[-]limits, and the sub[-]limits do not modify the requirements of the Communicable Disease coverage provisions." (Doc. 71, at 6.) Since these are entirely separate components of the Policies, the Court find this argument meritless in the AU Insureds' efforts to assert ambiguity.

Next, the AU Insureds argue they reasonably expected the sub-limits to apply per location based on the additional premium they paid when adding locations to their coverage. (Doc. 63-1, at 18.) Additionally, they argue they purchased the 2019 Policy with an $800 million limit to cover 27 Insured Locations and if the Communicable Disease sub-limit of $200,000 must be split by all 27 locations, that amounts to less than $7,500 per location which is illusory coverage. (Id. at 19.) Based on their reasonable expectations, they believe their interpretation of the Policies should be adopted. (Id.) In response, AFM argues the coverages are not illusory, and the additional premiums are because the 2019 Policy insured the additional locations from all enumerated harms,

not just communicable diseases. (Doc. 71, at 10-11.) Thus, AFM argues the AU Insureds received a "benefit" for the added premiums, even if the Communicable Disease sub-limits did not increase. (Id. at 11.) The Court agrees with AFM on both arguments.

As to illusory coverage, the Eleventh Circuit is clear that a court cannot interpret a policy to allow an insurer to provide largely illusory coverage. St. Paul Mercury Ins. Co. v. F.D.I.C., 774 F.3d 702, 709 (11th Cir. 2014). However, as AFM points out, "an insurance policy is only illusory when it results in a *complete lack* of any policy coverage." (Doc. 71, at 9 (quoting RAM Hotel Mgmt., LLC v. Hartford Fire Ins. Co., 614 F. Supp. 3d 1342, 1349 (N.D. Ga. 2022) (citation omitted and emphasis added)).) Although the $200,000 cap created by the Communicable Disease sub-limits applies to all locations, there would still be coverage amounting to more than $7,000 per location even if COVID-19 had been confirmed at *all* Insured Locations. The Court finds this is not illusory coverage as defined in this Circuit. Furthermore, it is unreasonable to assume an increase in insurance premiums carried with it an increase in specifically the Communicable Disease sub-limits. As Jeannette Tucker, an AFM underwriter, testified, the premium payments changed based on the value of the total insured property, not the number of locations. (Doc. 66-1, at 8; Doc. 63-3.) The sub-limits enumerated in both Policies were not adjusted based on how many locations were insured. Along this same note, AFM points out the $800 million total Policy limits do not apply

on a "per location" basis, so it would be unreasonable and inconsistent to find a sub-limit should be applied per location when it is silent to that point. (See Doc. 73, at 5.) Based on the foregoing, the Court finds the AU Insureds failed to prove an ambiguity which would require the Court to consider extrinsic evidence to interpret the Policies. The definition of "annual aggregate" and its application to the Communicable Disease provisions' sub-limits in both the 2019 and 2020 Policies is unambiguous and is meant to be applied globally.

Finally, the Court addresses the arguments regarding Nguyen. Although not binding on this Court, the Washington Court's findings are very illustrative because it considers the exact same language present in the Policies applied in the wake of COVID-19 coverage. The AU Insureds argue Nguyen is distinguishable because the Washington Court gave the sub-limits issue "little attention" and did not thoroughly consider the same arguments the AU Insureds assert. (Doc. 63-1, at 18 n.4.) The AU Insureds believe the ambiguity issue was underdeveloped in briefing, and thus the decision has little precedential value. (Doc. 74, at 7-8.) Meanwhile, AFM argues Nguyen is illustrative because the policy contained provisions with identical annual aggregate sub-limits, the policyholder argued they applied on a per location basis, and the Washington Court rejected the policyholder's arguments. (Doc. 64, at 10.) The Court finds Nguyen is helpful for a few reasons. First, the definition of "annual aggregate" in Nguyen is identical

16

to the one in the Policies. 541 F. Supp. 3d at 1228. Furthermore, the Washington Court explained "the language of this definition is clear; the insurance company will pay no more than the identified cap in a single year. It matters not whether COVID-19 was present at one or multiple [insured] locations." Id. The AU Insureds fault this decision for failing to thoroughly address as many arguments as they put forth; however, no thorough analysis is needed when the language is clear and unambiguous as the definition of annual aggregate was in Nguyen and as it is in the 2019 and 2020 Policies. The Court finds, consistent with Nguyen, the language of the annual aggregate sub-limits here is clear. Thus, there is no genuine dispute of material fact as to coverage under the Communicable Disease provisions in either the 2019 or 2020 Policy. AFM has paid out the maximum amount of coverage due under both Policies consistent with the Communicable Disease sub-limits, and the AU Insureds have no remaining claims against AFM under either Policy. As such, AFM's motion for summary judgment is **GRANTED**.

**B. Actual Presence of COVID-19 at Insured Locations**

The AU Insureds also move for summary judgment on the actual presence of COVID-19 at Insured Locations 1, 2, 8, 18, 20, 21, and 24.[2] (Doc. 63-1, at 10.) The Parties previously agreed COVID-19

---

[2] The AU Insureds clarify they still contend COVID-19 was present at "all or nearly all" of their Insured Locations; however, they only move for summary judgment as to these enumerated locations. (Doc. 74, at 2 n.3.)

was present at Insured Locations 1 and 21 for the 2019 Policy period. (Doc. 63-12, at 5.) AFM did not respond to this argument in its response to the AU Insureds' motion for partial summary judgment.

Because the Court already determined the Communicable Disease provisions' sub-limits apply on a global basis, the number of Insured Locations with the confirmed presence of COVID-19 is irrelevant. AFM already maxed out on its payment based on the Communicable Disease sub-limits. As such, this portion of the AU Insureds' motion is **DENIED AS MOOT**.

### IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that the AU Insureds' motion for partial summary judgment (Doc. 63) is **DENIED** and AFM's motion for summary judgment (Doc. 64) is **GRANTED**. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendant Affiliated FM Insurance Company, **TERMINATE** any remaining motions and deadlines, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 28th day of September, 2023.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA